UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THEA TAVENER; and DONALD TAVENER,

                          Plaintiffs,

v.                                                        5:19-CV-0459
                                                          (GTS/TWD)
JOHNSON & JOHNSON; and JOHNSON &
JOHNSON CONSUMER, INC., formerly known as
Johnson & Johnson Consumer Companies Inc.,

                          Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

THE LANIER LAW FIRM                                       RICHARD D. MEADOW, ESQ.
   Counsel for Plaintiffs
126 East 56th Street, 6th Floor
New York, NY 10022

PATTERSON BELKNAP WEBB & TYLER LLP                        JOHN D. WINTER, ESQ.
   Counsel for Defendants                                 THOMAS P. KURLAND, ESQ.
1133 Avenue of the Americas
New York, NY 10036

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently pending before the Court, in this products liability action filed by Thea and

Donald Tavener ("Plaintiffs") against Johnson & Johnson and Johnson & Johnson Consumer,

Inc. ("Defendants"), are Defendants' motion for a stay and Plaintiffs' motion to remand.  (Dkt.

Nos. 6, 16.)  For the reasons set forth below, Plaintiffs' motion to remand is granted and

Defendants' motion to stay is denied as moot.

I.      RELEVANT BACKGROUND

A.      Relevant Procedural Background

Before November of 2017, Plaintiffs filed their Complaint in this action in the New York

State Supreme Court, County of Onondaga.  (Dkt. No. 1, Attach. 2, at 2.)  In May of 2018, they

filed a Third Amended Complaint.  (Dkt. No. 1, Attach. 1, at 14.)  Generally, Plaintiffs' Third

Amended Complaint asserts personal injury claims against Defendants–as well as against eight

other entities including Imerys Talc America, Inc.–arising from Plaintiff Thea Tavener's alleged

exposure to Defendants' cosmetic talcum powder products allegedly contaminated with asbestos.

(Dkt. No. 2.)

On February 13, 2019, Imerys Talc America, Inc., and two affiliates, Imerys Talc

Vermont, Inc., and Imerys Talc Canada, Inc., filed a voluntary chapter 11 petition, commencing

a reorganization case in the United States Bankruptcy Court for the District of Delaware.  *In re:*

*Imerys Talc America, Inc., et al.*, No. 19-10289-LSS, Chapter 11 Voluntary Petition (D. Del.

filed Feb. 13, 2019).

On April 18, 2019, Defendants removed Plaintiffs' Complaint in this action to this Court

from the New York State Supreme Court, County of Ulster.  (Dkt. No. 1.)  Generally,

Defendants base their removal not on diversity jurisdiction but on federal question jurisdiction.

(*Id*.) Specifically, Defendants base their removal on 28 U.S.C. § 1452(a) and 28 U.S.C. §

1334(b), which essentially provide that Defendants can separately remove Plaintiffs' claims

against them to this Court if the claims are "related" to Imerys Talc Vermont, Inc.'s bankruptcy

proceeding in Delaware.  (*Id*.)  Defendants argue that the claims are so "related" to the

bankruptcy proceeding for the following reasons: (1) Imerys Talc Vermont, Inc., is "named as

[a] co-defendant[]" below (due to the fact that "each bottle of [Defendants'] cosmetic talcum powder purchased by the Plaintiff contained [Imerys' talc]" and Plaintiffs' claims "center on allegations that exposure to [Imerys'] talc caused the Plaintiff's injuries"); (2) "through a series of supply agreements, certain contractual rights and obligations between [Imerys] and [Defendants] arose upon the filing of the Complaint asserting the State Court Talc Claims" (for example, "[Imerys' was] contractually obligated to obtain insurance naming J&J as an additional insured"); and (3) therefore, the Court's resolution of the claims "could conceivably have an effect" on the estate being administered in bankruptcy (which satisfies the governing legal standard established by the Second Circuit). (*Id.* at ¶¶ 4, 18, 20.)

## B.    Defendants' Motion for a Stay

### 1.    Summary of Defendants' Arguments

Generally, in their motion for a stay, Defendants argue that the Court should issue an Order staying this action (as well as the other seven similar personal injury actions that Defendants have removed from state court to this Court) for the same reasons that, on April 30, 2019, Chief United States District Judge Colleen McMahon issued an Order staying the twenty state court "Talc actions" that have been removed to the United States District Court for the Southern District of New York (as well as any future such Talc actions that may be so removed): (1) Imerys Talc America, Inc., has a voluntary chapter 11 proceeding pending in the United States Bankruptcy Court for the District of Delaware; (2) in the bankruptcy proceeding, Defendants have petitioned the court for a ruling, pursuant to 28 U.S.C. § 157(b)(5), regarding where all such Talc actions shall be tried; (3) these Talc actions are "related to" the bankruptcy proceeding; (4) there will undoubtedly be additional litigation in the United States District and

Bankruptcy Courts in Delaware regarding Defendants' allegation that the removed Talc cases are "related to" the bankruptcy proceeding; (5) in addition, there is currently pending, in the United States District Court for the District of New Jersey, a Multi-District Litigation styled, *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices and Prods. Liab. Litig.* 220 F. Supp.3d 1356 (J.P.M.L. 2016); (6) it is in the interest of justice for the court to await rulings from the District of Delaware and/or from the Multi-District Panel before the court undertakes any substantive work in connection with any of the removed Talc actions; and (7) the judges to whom the removed Talc actions have been assigned have been polled and have consented to the entry of the order. (Dkt. No. 6.) *See also In re Various Removed State Court Actions Against, Inter Alia, Johnson & Johnson (State Court Talc Actions)*, 19-CV-3531, Order (S.D.N.Y. filed Apr. 30, 2019) (McMahon, C.J.).

### 2. Summary of Plaintiffs' Arguments

Generally, in response, Plaintiffs argue that a stay should not issue for three reasons: (1) a stay would be contrary to remand orders from at least thirty-seven other cases (approximately thirty-six of which were issued by the U.S. District Court for the Central District of California and one of which was issued by the U.S. District Court for the District of South Carolina); (2) those orders are (correctly) based on a conclusion that no federal question jurisdiction exists because the tort claims are not related to Imerys Talc America, Inc.'s Chapter 11 proceedings; and (3) those orders are also (correctly) based on an alternative conclusion that remand is supported by numerous equitable factors (including the fact that it would be inequitable to require a local plaintiff to litigate his or her case in an inconvenient federal court, it would be prejudicial to the plaintiffs to interrupt a state court action that has been developing for more

than two years as part of a statewide-coordinated effort intended to avoid inconsistent rulings, and it would needlessly duplicate judicial resources to take the cases away from state courts that have been considering the state law claims for more than two years). (Dkt. No. 10.)

### C. Plaintiffs' Motion to Remand

#### 1. Summary of Plaintiffs' Arguments

Generally, in their motion to remand, Plaintiffs assert four arguments. (Dkt. No. 16, Attach. 2.) First, Plaintiffs argue, as a threshold matter, Defendants have failed to meet their burden to plainly demonstrate this Court's subject-matter jurisdiction over Plaintiffs' claims. (*Id*.)

Second, Plaintiffs argue, in any event, Defendants' removal was defective, untimely and waved for the following reasons: (a) Defendants' Notice of Removal defectively failed to attach "a copy of all process and pleadings" as required by Fed. R. Bankr. Proc. 9027(a)(1); (b) Defendants' Notice of Removal was untimely filed on April 18, 2019, more than 30 days after Defendants received notice of Imerys Talc America, Inc.'s bankruptcy petition of February 13, 2019 (in violation of the 30-day deadline imposed by 28 U.S.C. § 1446[b]); and (c) Defendant Johnson & Johnson waived any opportunity it may have had to remove Plaintiffs' claims against it by entering into mandatory arbitration agreements, on April 15, 2001, with the current Imerys debtors. (*Id*.)

Third, Plaintiffs argue, furthermore, the Court does not have subject-matter jurisdiction over their claims for the following reasons: (a) the contingent indemnity obligations of Defendant Johnson & Johnson and the Imerys debtors do not support the exercise of "related to" jurisdiction because (i) Defendant Johnson & Johnson must establish that a subsequent lawsuit

against the Imerys debtors is unnecessary to impose liability on the debtors under the indemnity provisions, (ii) controlling law on indemnity and the duty to defend defeats Defendant Johnson & Johnson's argument, and (iii) the remote, contingent possibility that the Imerys debtors will eventually be entitled to indemnity from Defendant Johnson & Johnson (under a duty-to-defend provision of the parties' agreement) likewise fails to support jurisdiction; (b) Defendants have failed to prove that they share relevant insurance with the Imerys debtors; and (c) Defendant Johnson & Johnson and the Imerys debtors do not share an identity of interest supporting the exercise of "related to" jurisdiction. (*Id.*)

Fourth, Plaintiffs argue, in the alternative, the Court should abstain from hearing this case and remand it to state court for the following reasons: (a) mandatory abstention is appropriate in this case pursuant to 28 U.S.C. § 1334(c)(2); and (b) even if mandatory abstention is not appropriate, this Court should exercise its discretion to permissively abstain from hearing this case under 28 U.S.C. § 1334(c)(1), and equitably remand it under 28 U.S.C. § 1452(b). (*Id.*)

## 2. Summary of Defendants' Response

Generally, in response to Plaintiffs' motion, Defendants assert five arguments. (Dkt. No. 17.) First, Defendants argue, the Court should wait to rule on Plaintiffs' remand motion until after the U.S. District Court for the District of Delaware decides Defendants' venue motion (which will be fully briefed on June 4, 2019), for the following reasons: (a) because the Court has already decided that it possesses "related to" jurisdiction over talc cases such as the current case (*see Lalima v. Johnson & Johnson*, 19-CV-0464, Decision and Order, at 15-17 [N.D.N.Y. filed May 24, 2019] [Suddaby, C.J.]), the only remaining issue is whether equitable remand is appropriate, (b) the transferee court (i.e., the U.S. District Court for the District of Delaware)

should decide that remaining issue pursuant to persuasive authority (from district courts outside of the Second Circuit), and (c) at the very least, this Court should stay its decision of Plaintiffs' motion to remand, as have certain other district courts from within the Second Circuit. (*Id.*)

Second, Defendants argue, their removal of this action was neither improper nor untimely for the following reasons: (a) Exhibits A and B to their Notice of Removal satisfy the "copy of all process and pleadings" requirement contained in Fed. R. Bankr. Proc. 9027(a)(1); and (b) although Defendants received notice of the bankruptcy petition on February 26, 2019, the applicable deadline was 90 days of such notice pursuant to Bankruptcy Rule 9027 and 28 U.S.C. § 1452, and Defendants removed this action on April 25, 2019. (*Id.*)

Third, Defendants argue, this Court possesses subject-matter jurisdiction over this action, because the action is "related to" Imerys Talc America, Inc.'s bankruptcy proceeding. (*Id.*) In addition to elaborating on several arguments in their motion to stay, Defendants rely on the Court's finding in *Lalima v. Johnson & Johnson*, 19-CV-0464, Decision and Order, at 15-17 (N.D.N.Y. filed May 24, 2019) (Suddaby, C.J.), that the Court possesses "related to" jurisdiction over talc actions such as this one. More specifically, in *Lalima v. Johnson & Johnson*, 19-CV-0464, the Court rendered the following findings and conclusions: (a) in 1966, Defendants started being supplied with talc by Windsor Minerals, Inc.; (b) in 1989, Windsor Minerals, Inc., and its liabilities were sold by Johnson & Johnson to Cyprus Mines Corporation; (c) in 1992, Windsor Minerals, Inc., and its liabilities were sold  (as Cyprus Windsor Minerals, Inc.) by Cyprus Mines Corporation to RTZ America, Inc. (which renamed it Windsor Minerals, Inc.); (d) in 2011, Windsor Minerals, Inc., and its liabilities were sold by Rio Tinto America, Inc. (formerly known as RTZ America, Inc.) to Imerys Minerals Holding Limited in 2011; and (e) even if the Court

were to find that a genuine dispute exists as to whether Windsor Minerals, Inc., supplied the talc in question to Defendants, the Court would find that the Court's resolution of this factual issue (and Plaintiffs' claim) "could conceivably have an effect" on the estate being administered in bankruptcy (and thus this action is "related to" the bankruptcy proceeding). (*Id.*)

Fourth, Defendants argue, this Court should not conduct an abstention analysis because the Delaware District Court is the proper court to analyze abstention, and, in any event, such an analysis disfavors abstention, because (a) mandatory abstention is inapplicable in that 28 U.S.C. § 157(b)(4) exempts personal injury and wrongful death claims, and (b) permissible abstention is inappropriate in that it should be rarely invoked and equitable considerations weight against such an abstention. (*Id.*)

Fifth, Defendants argue, should the Court expend its resources to decide Plaintiffs' request for equitable remand, considerations governing such request favor denial of the request (and the centralized adjudication of the talc claims in the District of Delaware). (*Id.*) In particular, Defendants argue, the following factors weigh strongly against remand: (a) the efficient use of judicial resources, (b) the effect of remand on the administration of the bankruptcy estate, and (c) the possibility of inconsistent results. (*Id.*)[1] Furthermore, Defendants argue, contrary to the Court's finding in *Lalima*, the following factors to do *not* weigh in favor of remand: (d) the existence of questions of state law better addressed by state court; (e) comity;

---

[1] With regard to the second factor, Defendants argue that this case should not be viewed in isolation but in the context of the thousands of removed talc cases nationwide. (Dkt. No. 17.)

and (f) the expertise of the court in which the action originated. (*Id.*)[2] Finally, Defendants argue, while the seventh relevant factor (i.e., whether prejudice exists to Plaintiffs) weighs in favor of remand, it does not outweigh the need to efficiently use judicial resources and lessen the possibility of inconsistent results; if it did outweigh those two factors, then the more than eighty percent of the talc cases against Defendant Johnson & Johnson that have already been consolidated to a multi-district litigation in the U.S. District Court for the District of New Jersey would not have been so. (*Id.*)

### 3. Summary of Plaintiffs' Reply

Generally, in reply to Defendants' response, Plaintiffs assert three arguments. (Dkt. No. 18.) First, Plaintiffs argue, the Court should rule on their motion to remand before Defendants' motion to transfer, because, among other reasons, (a) the determination of subject-matter jurisdiction is a threshold matter, (b) Defendants do not sufficiently specify when the District of Delaware will rule on Defendant Johnson & Johnson's motion to transfer venue, and (c) the majority of district courts have decided motions to remand before motions to transfer venue. (*Id.*)

Second, Plaintiffs argue, the Court lacks subject-matter jurisdiction over their claim because, among other reasons (including previously asserted in their memorandum of law-in chief), Plaintiffs have, unlike the plaintiff in *Lalima v. Johnson & Johnson*, 19-CV-0464, (N.D.N.Y.), done the following two things: (a) submitted evidence sufficiently showing that the liabilities of Defendant Johnson & Johnson's subsidiary, Windsor Minerals, Inc., were not

---

[2]  With regard to the fourth and sixth factors, Defendants argue that the state law questions presented are not unsettled, particularly unusual or unfamiliar to this Court. (Dkt. No. 17.)

transferred to Imerys Talc Vermont, Inc.; and (b) sufficiently explained why the relevant indemnity provisions (which condition the duty to indemnify or defend on factual findings that would require separate litigation) do not create "related to" bankruptcy jurisdiction.   (*Id.*)

Third, Plaintiffs' argue, in any event, the Court should equitably remand the case for the following reasons: (a) all of the district court judges who have addressed the issue (including Chief U.S. District Judge Colleen McMahon of the Southern District of New York, on June 4, 2019) have granted motions to remand in these circumstances; and (b) the relevant factors (including whether state law issues predominate, whether the plaintiff's injuries sound entirely in state tort law, whether the retention of jurisdiction by the Court would result in prejudicial delay, and whether the actions had been removed merely in order to centralize it with other such actions) weigh in favor of remand. (*Id.*)

## II.  GOVERNING LEGAL STANDARDS

### A.  Legal Standard Governing Defendants' Removal

Under 28 U.S.C. § 1452(a), any party to a state court civil action may remove a claim or cause of action to the local district court provided that the claim or cause of action meets the jurisdictional requirements of § 1334.  28 U.S.C. § 1452(a).  Federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Litigation is "related to" "a pending bankruptcy proceeding [if] its outcome might have any 'conceivable effect' on the bankrupt estate."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992).

As for the deadline governing such a removal, the Court finds that the deadline is the ninety days allowed in Fed. R. Bankr. P. 9027(a)(2), not the thirty days allowed in 28 U.S.C. §

1446(b).  This is the rule adopted by the weight of authorities (as well as the better-reasoned authorities). *See* Hon. Thomas B. Bennett, "Removal, Remand, and Abstention Related to Bankruptcies: Yet Another Litigation Quagmire!" 27 *Cumb. L. Rev.* 1037, 1059 (1997) ("The majority position on this issue is that Fed. R. Bankr. P. 9027 still establishes bankruptcy removal procedure."); *see, e.g., Gilbert v. AGCO Corp.*, 09-CV-0962, 2009 WL 3672071, at *1 (N.D.N.Y. Oct. 30, 2009) (McAvoy, J.) ("The initial issue in this case is whether the motion for removal had to be made within the ninety days allowed by Bankruptcy Rule 9027(a)(2), or the thirty days contained in 28 U.S.C. § 1446(b) (the procedure generally applicable to removals). This Court agrees with the majority rule, as stated in Judge Gerling's analysis in *In re Boyer*, 108 B.R. 19, 24 (Bankr. N.D.N.Y.1988) . . . .  Thus, removals pursuant to § 1452 continue to be covered by the times set forth in Bankruptcy Rule 9027. Because DDC's removal was filed within ninety days, it is timely."); *In re D. Boyer*, 108 B.R. 19, 24 (Bankr. N.D.N.Y. 1988) (Gerling, B.J.) ("[T]he removal of claims or causes of action related to bankruptcy cases is now governed substantively by 28 U.S.C.A. § 1452(a) and procedurally by Fed. R. Bankr. P. 9027.").

> **B.**     **Legal Standard Governing Plaintiffs' Motion to Remand**

Plaintiffs' motion to remand arises under 28 U.S.C. § 1447(c), 28 U.S.C. § 1334(c), and 28 U.S.C. § 1452(b).

A motion to remand for lack of subject-matter jurisdiction may be made at any time.  28 U.S.C. § 1447(c). Federal district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Litigation is "related to" "a pending bankruptcy proceeding [if] its outcome might have any 'conceivable effect' on the bankrupt estate."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110,

114 (2d Cir. 1992). In general, the proponent of federal subject-matter jurisdiction has the burden of establishing that jurisdiction applies to a removed action. *See, e.g., Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-58 (2d Cir. 2006).

"A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under 1446(a)." 28 U.S.C. § 1447(c). "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court *shall* abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2) (emphasis added).[3]

Alternatively, a district court *may* abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law . . . from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1) (emphasis

_____

[3]        As a result, to determine whether abstention is required, courts consider the following six factors: "(1) [whether] the motion to abstain was timely; (2) [whether] the action is based on a state law claim; (3) [whether] the action is related to but not arising in a bankruptcy case or arising under the Bankruptcy Code; (4) [whether] Section 1334 provides the sole basis for federal jurisdiction; (5) [whether] an action is commenced in state court; and (6) [whether] . . . the action can be timely adjudicated in state court." *In re Refco, Inc. Secs. Litig.*, 628 F. Supp.2d 432, 445 (S.D.N.Y. 2008) (internal quotation marks omitted). Whether a proceeding can be "timely adjudicated" in state court is determined by evaluating the following four factors: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the [bankruptcy] estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

added).[4] "Federal courts should be sparing in their exercise of discretionary abstention" under 28

U.S.C. § 1334(c)(1). *In re Texaco Inc.*, 182 B.R. 937, 946-47 (Bankr. S.D.N.Y. 1995).

Finally, "[t]he court to which such claim or cause of action is removed [pursuant to 28

U.S.C. § 1452(a)] may remand such claim or cause of action on any equitable ground." 28

U.S.C. § 1452(b).[5]

## C.     Legal Standard Governing Defendants' Motion to Stay

"A district court may stay an action pursuant to 'the power inherent in every court to

control the disposition of the causes on its own docket with economy of time and effort for itself,

---

[4]     Generally, district courts in this Circuit consider twelve factors in deciding whether to abstain pursuant to 28 U.S.C. § 1334(c)(1): "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted core proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003) (internal quotation marks omitted).

[5]     Generally, district courts in this Circuit consider eleven factors in deciding whether to remand under 28 U.S.C. § 1452(b): "(1) the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of the applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case"; (6) "the existence of a right to a jury trial"; and (7) "prejudice to the party involuntarily removed from state court"; (8) "whether judicial economy would be served by equitable remand"; (9) "whether § 1334(b) is the sole basis for exercising federal jurisdiction"; (10) "whether the proceeding involves non-debtors"; and (11) "the likelihood that the proceeding was commenced in a particular forum because of forum shopping on the part of one of the parties." *In re Riverside Nursing Home*, 144 B.R. 951, 956 (S.D.N.Y. 1992) (citing *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 405, 407 [S.D.N.Y. 1991]); *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004).

for counsel, and for litigants.'" *Frank Brunckhorst Co., LLC, v. Castellini*, 17-CV-2324, 2018 WL 1788149, at *4 (E.D.N.Y. Feb. 28, 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 [1936]), *adopted*, 2018 WL 1377302 (E.D.N.Y. March 19, 2018). "A stay is not a matter of right but an exercise of judicial discretion that depends on the circumstances of the particular case." *Miller v. City of Ithaca*, 10-CV-0597, 2019 U.S. Dist. LEXIS 57184, at *4 (N.D.N.Y. Apr. 3, 2019) (Sannes, J.) (citing *Nken v. Holder*, 556 U.S. 418, 433 [2009]). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Miller*, 2019 U.S. Dist. LEXIS 57184, at *4 (quoting *Nken*, 556 U.S. at 433-34).

As for the particular factors considered by the Court when deciding to grant such a stay, the Court has discovered three different articulations of those factors. For the sake of thoroughness, the Court will recite all three articulations.

Some courts consider four factors: (1) whether the claims in the two actions arise from the same nucleus of facts; (2) whether the other pending action would resolve a controlling point of law in the stayed action; (3) the degree to which two actions overlap; and (4) whether the action to be stayed is in a less-advanced stage of litigation than is the other action. *Frank Brunckhorst Co., LLC*, 2018 WL 1788149, at *4 (citing *SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 455 [S.D.N.Y. 2003], *Caspian Inv., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 [S.D.N.Y. 1991], and *Malkan v. Mutua*, 12-CV-0236, 2012 WL 4722688, at *3 [W.D.N.Y. Oct. 3, 2012]).

Other courts consider four different factors (the first two of which are the most critical): (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance

of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Miller*, 2019 U.S. Dist. LEXIS 57184, at \*4 (citing *Nken*, 556 U.S. at 434).

Finally, other courts consider three factors related to various of the above-recited factors: (1) whether a stay would unduly prejudice, or present a clear tactical disadvantage, to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Infinity Headwear & Apparel, LLC v. Jay Franco & Sons, Inc.*, 15-CV-1259, 2017 WL 3309724, at \*9 (S.D.N.Y. Aug. 2, 2017) (citing *Softview Comput. Prods. Corp. v. Haworth, Inc.*, 97-CV-8815, 2000 WL 1134471, at \*2 [S.D.N.Y. Aug. 10, 2000]).

III.   **ANALYSIS**

The Court begins by noting that it will decide Plaintiffs' motion to remand before it decides Defendants' motion to stay. In response to the Court's previous finding in a similar case that a determination of whether the Court possesses subject-matter jurisdiction precedes any decision to stay an action (*see Lalima v. Johnson & Johnson*, 19-CV-0464, Decision and Order, at 15, n.8 [N.D.N.Y. filed May 24, 2019] [Suddaby, C.J.]), Defendant argues that, because this Court has already found that such subject-matter jurisdiction exists, no impediment exists to the Court's deciding Defendants' motion to stay first. (Dkt. No. 17, at 10 [attaching page "4" of Defendants' Opp'n Memo. of Law].)

While this argument is well taken, it ignores the following three facts: (1) the Court could not assure itself that this case is sufficiently similar to *Lalima* to invoke the Court's subject-matter jurisdiction (for example, whether the claims arise from Plaintiff Thea Tavener's post-

1966 exposure to Defendants' talc) without first examining the substance of Plaintiffs' motion to remand; (2) the Court is not in the practice of examining the substance of a motion without issuing a decision on the motion, and then transferring that undecided motion to another court for it to waste its resources to decide; and (3) in response to an argument that the Court could deny Plaintiffs' motion to remand in part (i.e., to the extent it seeks remand for lack of subject-matter jurisdiction) and leave the remainder of the motion undecided for another court, setting aside the unusualness of that practice and the comparative inefficiency of having the remainder of the motion decided by a court deluged with up to 2,400 similar motions (each of which presents different equitable factors to be carefully analyzed), this argument assumes without justification that a defendant's right to consolidation *always* outweighs a plaintiff's right to a swift decision.

### A.      Motion to Remand

After carefully considering the matter, the Court finds that Plaintiffs' motion to remand should be granted for the last reason offered by Plaintiffs: equitable remand is appropriate under 28 U.S.C. § 1452(b).  *See, supra,* Part I.C.1. of this Decision and Order.  To that reason, the Court adds three points.

First, the Court finds that the applicable deadline governing Defendants' removal was the 90-day period provided for pursuant to Bankruptcy Rule 9027 and 28 U.S.C. § 1452, and not the 30-day period provided for pursuant to 28 U.S.C. § 1446(b).  *See, supra,* Part II.A. of this Decision and Order.

Second, in response to Defendants' evidence that Windsor Minerals, Inc. (for whose actions Imerys Talc Vermont, Inc., is now liable) supplied the talc in question, Plaintiffs argue that they have (a) submitted evidence sufficiently showing that the liabilities of Defendant Johnson & Johnson's subsidiary, Windsor Minerals, Inc., were not transferred to Imerys Talc Vermont, Inc., and (b) sufficiently explained why the relevant indemnity provisions (which condition the duty to indemnify or defend on factual findings that would require separate litigation) do not create "related to" bankruptcy jurisdiction. *See, supra,* Part I.C.3. of this Decision and Order. With all due respect to Plaintiffs, the Court is not convinced by their reasoning. Moreover, even if the Court were to find that (based on the current record) a genuine dispute exists as to whether Imerys Talc Vermont, Inc., has assumed the liabilities of Windsor Minerals, Inc., arising from the time in question, the Court would find that its resolution of that issue (and Plaintiffs' claim) "could conceivably have an effect" on the estate being administered in bankruptcy (and thus this action is "related to" the bankruptcy proceeding).

Three, despite the foregoing points, the Court finds that equitable remand is appropriate under the circumstances. Defendants characterize the relevant factors as being seven in number. (Dkt. No. 17, at 27 [attaching page "21" of Defs.' Opp'n Memo. of Law].) However, as explained above in note 5 of this Decision and Order, courts generally consider at least *eleven* factors in deciding whether to remand under 28 U.S.C. § 1452(b): (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to a jury trial; (7) prejudice to the party involuntarily removed from state court; (8) whether

judicial economy would be served by equitable remand; (9) whether § 1334(b) is the sole basis for exercising federal jurisdiction; (10) whether the proceeding involves non-debtors; and (11) the likelihood that the proceeding was removed because of forum-shopping.

The Court finds that the first factor (i.e., the effect on the efficient administration of the bankruptcy estate) is neutral, weighing as much in favor of remand as it weighs against remand. Generally, evidence relevant to the first factor includes (a) whether allowing the removed claim to proceed in the state court action would have a significant impact upon the administration of bankruptcy estate,[6] or interfere with the bankruptcy proceeding,[7] (b) the extent there might be any delay in the action due to congestion on the bankruptcy court's docket,[8] and (c) whether the bankruptcy court possesses less expertise and familiarity with the case than does the state court.[9] Here, the state court's adjudication of the claim in question, which arises from Plaintiff Thea Tavener's alleged exposure of asbestos-laden talc for a period of six years approximately fifty years ago (along with other alleged exposure over the course of her life), would not, by itself, appear to have a significant impact upon the administration of the Imerys debtors' bankruptcy estate, or interfere with the bankruptcy proceeding. Granted, the Court agrees with Defendants that this claim, together with other such claims (such as those in the seven other removed asbestos cases pending before the Court), could have a significant impact on the administration of the bankruptcy estate, or interfere with the bankruptcy proceeding. *See, supra,* note 1 of this

---

[6]     *In re 47-49 Charles Street, Inc.*, 211 B.R. 5, 7 (S.D.N.Y. 1997)

[7]     *Shiboleth v. Yerushalmi*, 412 B.R. 113, 117 (S.D.N.Y. 2009).

[8]     *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 300 (Bankr. E.D.N.Y. 1997).

[9]     *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 696 (Bankr. E.D.N.Y. 1997).

Decision and Order. However, at most this latter fact negates the former fact; to find that the latter fact outweighs the former fact would be to ignore the former fact. (Plaintiffs should hardly be punished by the fact that theirs is not the only claim pending against Defendants.) For these reasons, the Court finds that the these impacts essentially negate each other, causing the effect on the bankruptcy proceeding to be neutral.

    The Court finds that the second and third factors (i.e., the extent to which issues of state law predominate, and the difficulty or unsettled nature of the applicable state law) weigh slightly in favor of remand. Generally, evidence relevant to the second and third factors includes (a) the extent to which any non-state-law claims are present in the action,[10] (b) whether the state law is particularly complex or its application requires special expertise,[11] (c) whether the state court is more familiar with the case because it had been involved in it for a significant period of time,[12] and (d) whether the state court is well suited to efficiently adjudicate the matter.[13] Here, the Court agrees with Defendants the removed claim is not unsettled, particularly unusual or unfamiliar to this Court. *See, supra,* note 2 of this Decision and Order. However, the claim is

---

[10]     *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 300-01 (Bankr. E.D.N.Y. 1997).

[11]     *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 301 (Bankr. E.D.N.Y. 1997).

[12]     *See In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 302 (Bankr. E.D.N.Y. 1997) (finding state court more familiar because it had been intimately involved in arbitration for more than a year); *Shiboleth v. Yerushalmi*, 412 B.R. 113, 117-18 (S.D.N.Y. 2009) (finding state court more familiar because had it conducted hearings and examined records for more than two years); *cf. Rahl v. Bande*, 316 B.R. 127, 118 (S.D.N.Y. 2004) (finding that judicial economy favored remand because state court special referee had been involved in case for more than two-and-a-half years).

[13]     *In re 47-49 Charles Street, Inc.*, 211 B.R. 5, 7 (S.D.N.Y. 1997); *In re Montague Pipeline Tech. Corp.*, 209 B.R. 295, 300-01 (Bankr. E.D.N.Y. 1997).

one solely of state law, which this Court does not usually apply (its cases arising from federal question jurisdiction, not diversity jurisdiction). Moreover, the state court has been involved in this action for more than twenty months (i.e., since the action's filing on September 18, 2017); and it has overseen the completion of discovery, deemed the case ready for trial, and indeed is past the previously scheduled trial date of March 11, 2019. (Dkt. No. 16, Attach. 4-7.) For all of these reasons, the Court finds that the second and third factors weigh slightly in favor of remand.

The Court finds that the fourth factor (i.e., comity) is neutral, weighing in favor of remand as much as it weighs against remand (because considerations of comity to the state court exist as much as do considerations of comity to the bankruptcy court).[14]

The Court finds that the fifth factor (i.e., the degree of relatedness or remoteness of the proceeding to the main bankruptcy case) is neutral, weighing as much in favor of remand as it weighs against remand. Evidence relevant to the fifth factor includes (a) whether the state court proceeding had arisen a significant length of time before the date of the bankruptcy petition,[15] and (b) whether the state court action is the "focal point" of the bankruptcy proceeding.[16] Here, the state court proceeding was commenced on September 18, 2017, nearly seventeen months before the bankruptcy proceeding on February 13, 2019. Granted, the Court has difficulty imagining how the state court's adjudication of this particular claim would have a significant

---

[14]  *See LMRT Assoc., LC v. MB Airmont Farms, LLC*, 447 B.R. 470, 474 (E.D.Va. 2011) (considering comity to bankruptcy court as factor).

[15]  *See Shiboleth v. Yerushalmi*, 412 B.R. 113, 116-17 (S.D.N.Y. 2009) (finding that the degree of relatedness or remoteness of the state court proceeding to the bankruptcy proceeding was minimal where prior had arisen two years before latter).

[16]  *In re Montague Pipeline Techn. Corp.*, 209 B.R. 295, 302 (Bankr. E.D.N.Y. 1997).

impact upon the bankruptcy proceeding (for the reasons stated above). However, the Court imagines that adverse judgments in actions like the state court proceeding below played a significant role in the Imerys debtors' filing of their bankruptcy petition. Because these facts essentially negate each other, the Court finds this factor to be, by and large, neutral.

The Court finds that the sixth factor (i.e., the existence of a right to a jury trial) is neutral, weighing in favor as remand as much as it weighs against remand (because neither party focuses on this factor, and Plaintiffs' right to a jury trial would in all likelihood be honored in federal court).

The Court finds that the seventh factor (i.e., prejudice to the party involuntarily removed from state court) weighs strongly in favor of remand. Generally, evidence relevant to the seventh factor includes (a) whether actions have already been taken in the state court proceedings,[17] and (b) whether retention of jurisdiction by federal court would result in significant, prejudicial delay in matter that could be resolved in an expeditious manner in the state court forum.[18] Here, as stated above, in the state court action, the case has been deemed ready for trial. The Court notes that Defendants do not contest the existence of this prejudice; rather, they merely try to diminish it by arguing that it does not outweigh the need to efficiently use judicial resources and lessen the possibility of inconsistent results. *See, supra,* Part I.C.2. of this Decision and Order. In support of that argument, it relies on the eighty percent of talc cases against Defendant Johnson & Johnson that have been consolidated to a multi-district litigation in the U.S. District Court for

---

[17]     *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 697 (Bankr. E.D.N.Y. 1997).

[18]     *In re Montague Pipeline Techn. Corp.*, 209 B.R. 295, 302-03 (Bankr. E.D.N.Y. 1997).

the District of New Jersey. Setting aside the illogical nature of an argument that tries to diminish one factor by emphasizes the strength of two other factor, the Court rejects this argument as unconvincing because Defendants offer no evidence of (a) which of those actions, if any, had already been taken in the state court proceedings,[19] and (b) which of those actions, if any, presented claims that could have been decided just as expeditiously in federal court as in state court.

The Court finds that the eighth, ninth, tenth and eleventh factors (i.e., whether judicial economy would be served by equitable remand, whether 28 U.S.C. § 1334[b] is the sole basis for exercising federal jurisdiction, whether the proceeding involves non-debtors, and the likelihood that the proceeding was removed to federal court because of forum-shopping) weigh slightly in favor of remand. New York State court would more economically decide Plaintiff's claim due to its familiarity with the case and the regularity with which it handles similar cases; Section 1334(b) is indeed the sole basis for exercising federal jurisdiction over this claim; the proceeding in question does involve non-debtors; and Defendants have conceded that they removed this action merely in order to "centralize" the approximately 2,400 asbestos claims against them.[20] (*See, e.g.,* Dkt. No. 17, at 8 [attaching page "2" of Defs.' Opp'n Memo. of Law].)

---

[19]     *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676, 697 (Bankr. E.D.N.Y. 1997).

[20]     The Court notes that "forum-shopping" is defined as "[t]he practice of choosing the more favorable jurisdiction or court in which a claim might be heard." *Black's Law Dictionary* 726 (9th ed. 2009). The Court finds that, while Defendants' conduct may not serve as a typical example of forum-shopping, it possesses two characteristics of that practice: (1) choosing a particular jurisdiction (i.e., not only a federal court upon removal but a particular federal court upon transfer following removal); and (2) being motivated by a belief that the particular jurisdiction (which is located in the state of Imerys' incorporation) will be more favorable to them than a court located in the state (and county) in which Plaintiff resides.

In sum, the second, third, eighth, ninth, tenth and eleventh factors weigh slightly in favor of remand; the seventh factor weighs strongly in favor of remand; and the first, fourth, fifth and sixth factors are neutral. Balancing these factors, the Court finds that equitable remand is appropriate under 28 U.S.C. § 1452(b). In the alternative, the Court finds that permissible abstention is appropriate under 28 U.S.C. § 1334(c) for essentially the same reasons.

**B.      Motion to Stay**

Because the Court is remanding Plaintiffs' claims against Defendants, Defendants' motion to stay is denied as moot.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion to remand this action to state court (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to stay (Dkt. No. 6) is **DENIED as moot**.

Dated: July 2, 2019
        Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge